Stevens Realty Company v. Commissioner.
Stevens Realty Co. v. Commissioner
Docket No. 6085-65.
United States Tax Court
T.C. Memo 1967-113; 1967 Tax Ct. Memo LEXIS 148; 26 T.C.M. (CCH) 528; T.C.M. (RIA) 67113; May 19, 1967
James Q. Doran, 524 Walnut St., Cincinnati, Ohio, for the petitioner. Rodney G. Haworth, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year ended August 31, 1963 in the amount of $6,056.77. We are called upon to determine the useful lives of two buildings and a heating and air conditioning system located in one of the buildings. Findings of Fact Petitioner, Stevens Realty Company, is an Ohio corporation with its principal office, at the time of filing the petition herein, in Middletown, Ohio. Petitioner's Federal income tax return for the taxable year ended August 31, 1963 was filed with the *149 district director of internal revenue, Cincinnati, Ohio. During the late 1950's, petitioner purchased land in the City of Middletown located immediately adjacent to a shopping center development. In 1960, at a cost of $130,386.83, petitioner constructed a special type one-floor office building known as the "Medical Arts Building." The approximately 10,000-square-foot building is of a slab-type wall bearing brick and concrete block construction, with the interior walls of typical stud framing. It was constructed under a cost limitation imposed by petitioner and is what is generally characterized as "minimum-type construction." The building conformed to the building code of Middletown. The Medical Arts Building has eight suites, designed for use by doctors and medical specialists. During the year in question and up to the time of trial, all eight suites had been rented to medical practitioners, each occupying from 800 to 1,700 square feet of area. All but one (and possibly two more) [1] of the applicable leases ran for a ten-year period commencing at various dates in the 1960's and ending in the 1970's, each of which specified that the lease was renewable at a rental to be agreed *150 upon. The building has ample parking facilities. The trend in medical buildings and offices has been a movement to the suburbs. Petitioner adopted a useful life of 25 years for the Medical Arts Building. Respondent has determined that the proper useful life is 45 years. In 1962, petitioner at a cost of $205,776.98, constructed the "Fashion Fair Building," designed for use as a retail mercantile operation. The building was constructed according to certain specifications, requested by the prospective lessor, so that it could be used as a retail discount-type store. It is a "shell type" building containing approximately 50,000 square feet. Its construction can be described as bar joist, steel frame, insulated metal deck with one inch of insulation, and 15-year bonded roof; it has concrete block bearing walls, faced with brick and block backing, a low-cost fire rate of laid-in ceiling with strip lighting, and a slab floor covered in the sales area with asphalt tile. Some small toilet facilities, office space, and *151 loading area are also included. The Fashion Fair Building also meets the building code of the City of Middletown and is "minimum-type construction." The Fashion Fair Building is under lease for a period of 15 years with options in the lessee to renew the lease on the same terms for two successive 5-year terms. Construction of a 14,000-square-foot addition is planned. The building and addition could be used in the future by tenants of a nature similar to the present tenants and could be adapted to other uses. Both the Fashion Fair Building and the Medical Arts Building are located on property zoned for neighborhood business. The surrounding area is suburban and residential. The locality has witnessed rapid development, especially in recent years. Petitioner adopted a useful life for the Fashion Fair Building of 25 years. Respondent has determined that the proper useful life is 50 years. Petitioner installed a heating and air conditioning system in the Fashion Fair Building at a cost of $69,600. The system consists of nine combination heating and air conditioning units mounted on the roof. Petitioner adopted a useful life of 10 years for the system. Respondent has determined *152 that the proper useful life is 25 years. Ultimate Finding of Fact The useful lives of the Medical Arts Building, the Fashion Fair Building, and the heating and air conditioning system are 45 years, 50 years, and 25 years, respectively. Opinion Petitioner adopted useful lives of 25 years for the Medical Arts Building and the Fashion Fair Building and 10 years for the heating and air conditioning system of the latter. Respondent, relying on the guidelines established by Rev. Proc. 62-21, determined that the useful lives were 45 years, 50 years, and 25 years, respectively. The issues are factual. Respondent's determination is presumptively correct and the burden of proof is on petitioner. James D. Dunn, 42 T.C. 490 (1964). The parties agree that the test is "the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of income." (Emphasis added.) Sec. 1.167(a)-1(b), Income Tax Regs.; cf. Massey Motors, Inc. v. United States, 364 U.S. 92 (1960). In applying this test, respondent recognizes that several factors should be taken into account, *153 of which estimated physical life is important but not controlling. Sec. 1.167(a)-1(b), Income Tax Regs., supra. Petitioner is an investor rather than a direct user of the facilities in question. The testimony of petitioner's witnesses, in support of the periods of useful lives adopted by petitioner, rested principally on the fact that both buildings were "minimum-type construction" and on the assertions of potential future dangers stemming from an alleged trend toward doctor-owned office facilities in the case of the Medical Arts Building and from the difficulities of adaptability to possible future tenants in the case of the Fashion Fair Building. With respect to the heating and air conditioning system, petitioner rests its argument on testimony indicating that, in the early years, the operation of the system required replacement of two of the nine compressors. As to the "minimum-type construction" argument, the most that can be said is that the useful physical lives of the two buildings were probably less than exists where the architect and builder are given a free hand. But this fact alone does not require a decision that the period used by petitioner *154 is correct. Petitioner's argument as to future possibilities reflects the factor of obsolescence, which in a case such as this may properly be taken into account in determining the useful life of the property. Sec. 1.167(a)-9, Income Tax Regs. But, in order for such "normal obsolescence" so to be recognized, petitioner must establish its probability with reasonable certainty. See James D. Dunn, supra at p. 494. This we think petitioner has not done. The testimony shows that there was good access to both the Medical Arts Building and the Fashion Fair Building and that both were in a suburban area which was well located and well developed. To be sure, the testimony reflects generally the potential future difficulties, but we were not favored with any detailed analysis, either in absolute terms or by way of comparison with other similar situations, as to the extent to which petitioner's investment would be unfavorably affected by reduced income or additional costs of converting the facilities to meet the alleged requirements of new tenants. The fact is that, up to the time of trial, the Medical Arts Building was fully occupied and an addition *155 to the Fashion Fair Building was in process. Such addition may have required adaptation in the future, but we are not convinced that, with respect to both it and the original building, this could not have been reasonably accomplished by a split-up of space. Under all the circumstances, we cannot say that the alleged brooding omnipresence of obsolescence impended during the taxable year before us to such an extent as to justify the shortened periods of useful life adopted by petitioner. Whether the possibilities feared by petitioner may become probabilities sufficient to permit a shortening of useful lives in some future taxable year, we need not now decide. As to the heating and air conditioning system, petitioner has presented the general statement of one witness (who admitted he had not seen the equipment) that the maximum useful life was 20 years - such statement being in direct conflict with the position of respondent's witness (who had seen the equipment). Petitioner's witness also testified that two of the compressors had failed, but the record indicates that this failure occurred within the period of the guaranty of the manufacturer, who provided replacements. In any event, *156 this could occur even in the best equipment and we cannot say that the useful life of the system as a whole would necessarily thereby be curtailed. The guidelines established by Rev. Proc. 62-21 were designed to provide a framework of useful lives within which the business would operate with reasonable advance assurance, thus avoiding extensive and unnecessary case-by-case analysis. Taking into account the facts that the qualifications of the "expert" witnesses and the quality of their testimony were not of a high order, we think that the respondent's determination in accordance with these guidelines should not be disturbed. With respect to the taxable year before us, the record herein does not contain sufficient evidence to convince us to do otherwise. Decision will be entered for the respondent. Footnotes
1. The leases for suites 6 and 7 were not in evidence. One lease covered parts of suites 7 and 8, the remaining portions of the latter suites being separately leased.↩